UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HAMZA ANWER ALSHARIF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Case No. 20-30030-PBS |
| | ) | |
| | ) | |
| CHRISTOPHER DONELAN, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION CONCERNING PETITION FOR
A WRIT OF HABEAS CORPUS
(Dkt. No. 1)

I.      Introduction

Petitioner Hamza Answer Alsharif ("Petitioner") brings this habeas petition seeking relief

pursuant to the decision of District Judge Patti Saris in *Brito v. Barr*, 415 F. Supp. 3d 258 (D.

Mass. 2019), *appeal docketed*, No. 20-1119 (1st Cir. Feb. 10, 2020) ("*Brito*").  Petitioner argues

that his immigration bond hearing, which Petitioner states was held on December 4, 2018 (Dkt.

No. 1 at 1), did not meet constitutional due process standards because he – rather than the

government – was required to bear the burden of proving that he did not pose a danger to the

community or a risk of flight and the immigration judge failed to consider alternative conditions

of supervised release.  Petitioner claims that this violation of his Due Process rights was

prejudicial to him and that he is entitled to a new bond hearing within seven (7) days of an order

from this court requiring a hearing at which the standards established in *Brito* are applied and

that he should be released if the government fails to provide a hearing within this time frame

(Dkt. No. 1 at 1-3).  Respondent Christopher Donelan, Sheriff of Franklin County

("Respondent"), requests that this court dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(6),

contending that the petitioner has not shown that he was prejudiced by the standards applied at his bond hearing, and that he cannot do so, because, regardless of the burden of proof applied, the evidence established that he posed a danger to the community at large and was not entitled to release (Dkt. No. 11). The presiding District Judge referred the petition to the undersigned for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). For the reasons stated below, the undersigned recommends that the presiding District Judge GRANT the Respondent's motion to dismiss and DENY Petitioner's request for habeas relief.

II.    Relevant Background

The parties agree that Petitioner is a member of the post-hearing class certified in *Brito* and the government concedes that, at Petitioner's custody redetermination hearing, which Respondent states Petitioner requested on November 20, 2018, the immigration judge assigned to Petitioner the burden of proving that he was not a danger to the community based on his criminal history (Dkt. No. 11 at 3).[1]

Petitioner, a native and citizen of Libya, came to the United States in July 2010 at age 22 on a student visa that authorized him to stay in the United States until February 24, 2011 (Dkt. No. 1 at 4, ¶ 18; Dkt. No. 11-1, ¶ 5). Petitioner did not depart the United States and, after February 24, 2011, had no legal status in the United States. According to records of the United States Immigration and Customs Enforcement Agency ("ICE"), Petitioner was taken into ICE custody on October 17, 2018 (Dkt. No. 11-1, ¶ 6). ICE made the decision to detain him pursuant to 8 U.S.C. § 1226(a) (Dkt. No. 11-1, ¶ 14). Petitioner requested a redetermination hearing

---

[1] Neither party has informed this court whether the immigration judge issued a written decision denying Petitioner's request to be released on bond. Respondent has not submitted a copy of any such written decision, nor has Respondent submitted a transcript of the bond hearing held by the immigration judge who denied Petitioner request for release.

before the BIA; that hearing was held on November 20, 2018.  The immigration judge ruled that Petitioner did not satisfy his burden of proving that he would not be a danger to the community if released during the pending removal proceedings (Dkt. No. 11-1, ¶ 15).

In arguing for a new bond hearing, Petitioner points out that he has no criminal convictions.  He states that, although he is presently facing state court criminal charges, he had been released on a bond set by the Superior Court Department of the Massachusetts Trial Court, Suffolk Division, when ICE detained him at one of his state court appearances.  He represents that he never missed any court date in his state court case (Dkt. 1 at 4, ¶ 18).  Petitioner has a fixed address in Boston at which he was residing and where he could continue to reside if he were released on bond (Dkt. No. 1 at 4, ¶ 18; Dkt. No. 1-1 at 1, ¶ 6).

For his part, Respondent relies on Petitioner's criminal history as reflected in the Boston Police Department incident report attached as an exhibit to the Declaration of Supervisory Detention and Deportation Officer David T. Wesling.  The report reflects that Petitioner was arrested on June 22, 2018 at around 1:00 a.m. for participating in a robbery committed with a knife (Dkt. No. 11-2 at 3).  The narrative portion of the report states that Boston police officer Linehan received a call about a robbery in progress on New Sudbury Street at 1:10 a.m. on June 22, 2018.  The dispatcher stated that four men of middle eastern origin were involved in the incident and were headed towards Government Center.  When Officer Linehan and other police officers responded to the call, they stopped four men matching the dispatch description.  The victim arrived on the scene and told the officers that these were the four men who had just robbed him.  After having been informed about an identification protocol, the victim told police officers that one of the men put a knife to his throat and identified the suspect he said had done so.  Police officers found a medium sized folding knife in this suspect's front pocket.  The victim

said that Petitioner had punched him in the face multiple times and that the men had taken

around $2,000 from him in $100-dollar and $20-dollar bills.  When officers searched Petitioner,

they found that he had $1,620 in $100-dollar and $20-dollar bills crumpled up and stuffed into

his front pockets and the waistband of his underwear (Dkt. No. 11-2 at 9).  Petitioner was

arraigned in state district court on charges arising from the arrest on June 22, 2018.  On August

29, 2018, he was indicted by a Suffolk County Grand Jury on charges of armed robbery and

assault and battery.  Those charges remain pending (Dkt. No. 11-1, ¶¶ 12- 13).  Petitioner, who is

under an order of removal which has been appealed to the BIA, remains detained under §

1226(a) (Dkt. No. 11-1, ¶ 16).

III.   Discussion

1.  Applicable Legal Standards

Under 8 U.S.C. § 1226(a), "an alien may be arrested and detained pending a decision on

whether the alien is to be removed from the United States."  After ICE makes the initial decision

to detain a foreign national, the foreign national may request a bond hearing in immigration court

at any time before a removal order becomes final.  *See* 8 C.F.R. § 236.1(d)(1).  In *Pensamiento v.*

*McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018), the court held that the Due Process Clause

"requires placing the burden of proof on the government in § 1226(a) custody redetermination

hearings."  *Id.* at 692.  In *Brito*, a subsequent class action, the court entered the following

declaratory judgment:

> [An] alien[] detained pursuant to 8 U.S.C. § 1226(a) [is] entitled to receive a bond
> hearing at which the Government must prove the alien is either dangerous by
> clear and convincing evidence or a risk of flight by a preponderance of the
> evidence and that no condition or combination of conditions will reasonably
> assure the alien's future appearance and the safety of the community.  At the bond
> hearing, the judge must evaluate the alien's ability to pay in setting bond above
> $1,500 and must consider alternative conditions of release, such as GPS
> monitoring, that reasonably assure the safety of the community and the alien's

future appearances.

*Brito*, 415 F. Supp. 3d at 271.  The *Brito* court further held that class members entitled to the

benefit of the declaratory judgment could seek relief by showing prejudice via an individual

habeas petition.  *Id.* ("As the Court already explained in its class certification opinion, members

of the Post-Hearing Class will have to litigate prejudice through individual habeas petitions.").

> To establish prejudice, a petitioner must show that a due process violation *could*
> have affected the outcome of the custody redetermination hearing.  *See Doe v.*
> *Tompkins*, [Civil Action] No. 18-cv-12266, 2019 U.S. Dist. LEXIS 22616, at *3-4
> (D. Mass. Feb. 12, 2019) (citing *Pensamiento* ... , 315 F. Supp. 3d [at] 693 ...;
> *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)).  The prejudice inquiry
> requires the court to conduct "an individualized analysis of [the petitioner's]
> criminal history and personal characteristics."  *Brito* [*v. Barr*], 395 F. Supp. 3d
> [135,] 147 [(D. Mass. 2019)].

*Mayic v. Hodgson*, Civil Action No. 19-12534-PBS, 2020 WL 360502, at *1 (D. Mass. Jan. 22,

2020) (third alteration in original).

> In analyzing a detainee's request for a bond redetermination, an immigration judge may

consider a number of factors, including:

> "(1) Whether the alien has a fixed address in the United States; (2) the alien's
> length of residence in the United States; (3) the alien's family ties in the United
> States, and whether they may entitle the alien to reside permanently in the United
> States in the future; (4) the alien's criminal record, including the extensiveness of
> criminal activity, the recency of such activity, and the seriousness of the offenses;
> (7) the alien's history of immigration violations; (8) any attempts by the alien to
> flee persecution or otherwise escape authorities, and (9) the alien's manner of
> entry to the United States."

*Vieira v. Moniz*, Civil Action No. 19-12577-PBS, 2020 WL 488552, at *3 (D. Mass. Jan. 30,

2020) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  An immigration judge

"may choose to give greater weight to one factor over others, as long as the decision is

reasonable," and may consider the details of a criminal complaint or an arrest report as a basis of

the decision on detention prior to adjudication of the offense or offenses set forth in the criminal

complaint or arrest report.  *See Matter of Guerra*, 24 I & N. Dec. at 40-41.  In *Arias-Minaya v. Holder*, 779 F.3d 49 (1st Cir. 2015), the First Circuit observed that it had approved the BIA's "reliance on facts contained in a police report though the charges were still pending," reasoning that "in the context of determining whether an alien warrants discretionary relief from removal, the fact of an arrest and its attendant circumstances, without more, may have probative value in assessing his character (and, thus, his suitability for discretionary relief)."  *Id.* at 54 (citing *Henry v. INS*, 74 F.3d 1, 5-7 (1st Cir. 1996); *White v. INS*, 17 F.3d 475, 479-80 (1st Cir. 1994)).  The question of release on bond is a discretionary decision by an immigration judge, subject, as is a removal order, to constitutional requirements.  *See generally id.; see also Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 12 (D. Mass. 2017) (describing a bond hearing held pursuant to 8 U.S.C. § 1226(a) as a discretionary hearing).

2.  Analysis

It is Petitioner's burden to show "that the misallocation of the burden of proof *could* have affected the outcome of the custody redetermination hearing."  *Doe v. Tompkins*, Civil Action No. 18-12266-PBS, 2019 WL 8437191, at *1 (D. Mass. Feb. 12, 2019).  While *Matter of Guerra* is inconsistent with *Pensamiento* and *Brito* with respect to the allocation of the burden of proof at a discretionary bond hearing, it remains instructive on the principles that govern an immigration judge's decision about whether a foreign national who is in this country illegally should be detained while removal proceedings are pending.  *Matter of Guerra* provides that "an immigration judge has broad discretion in deciding the factors that he or she [will] consider in [a] custody redetermination[]."  *Matter of Guerra*, 24 I & N. Dec. at 40.  In the case at bar, Respondent represents that the immigration judge relied exclusively on Petitioner's criminal history as a basis for deciding that his release would present a danger to the community (Dkt.

No. 11-1, ¶ 15).  An immigration judge may reasonably decide that a recent history of criminal conduct, even if it has not resulted in a conviction, outweighs other factors that might warrant release on bond.  *Matter of Guerra*, 24 I & N. Dec. at 40.  An immigration judge relying on a charge of recent criminal conduct should consider whether the contents of the charging document or other source of information about the alleged criminal conduct is detailed and specific and carries other indicia of reliability.  *See id.* at 41; *see also Maldonado-Velasquez*, 274 F. Supp. 2d at 13-14.

The incident report relating the circumstances of Petitioner's arrest is specific and detailed and alleges Petitioner's active participation in the violent crime of armed robbery using a knife.  The evidence against Petitioner appears to be strong.  Very shortly after the robbery, the victim identified Petitioner as an assailant who punched him the face.  The discovery of $100-dollar and $20-dollar bills stuffed in Petitioner's front packets and the waistband of his underwear tended to confirm the victim's account of the armed robbery and the extent of Petitioner's participation in it.  Police officers were sufficiently confident of their reading of the situation to return the money found on Petitioner to his accuser at the end of the identification proceeding.  The incident report suggests the possibility that the robbery was recorded by video cameras in the Haymarket station (Dkt. No. 11-2 at 9).  Following Petitioner's arrest, a grand jury found probable cause to believe that he committed armed robbery and assault and battery (Dkt. No. 11-1, ¶ 13).  The criminal charges against Petitioner were so recent that they remained pending when the immigration judge ruled that Petitioner should be detained during his removal proceedings because reliable evidence of violent criminal activity made him a danger to the community (Dkt. No. 11-1, ¶ 15).  Petitioner argues that the outcome of the bond hearing could have been different if the government had the burden of proof because he had never been

convicted of any crime, the state court had released him on bond, he had not missed any court dates, and he had a place to live and a job to which to return (Dkt. No. 1 at 4, ¶ 18).  The petition is accompanied by documents and letters of support attesting to Petitioner's good character and their authors' willingness to support him in making good choices if he is released (Dkt. No. 1-1 at 1-11).

"A central factor in weighing an alien's bond request is 'the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'"  *Maldonado-Velasquez*, 274 F. Supp. 3d at 14 (quoting *Matter of Guerra*, 24 I. & N. Dec. at 40).  Petitioner's record of criminal activity is not extensive, but the activity is recent and the charges, armed robbery and assault and battery, are violent and serious.  Petitioner does not dispute the factual account of his crime as set out in the incident report except insofar as he states, generally, that he "has never put anyone in danger" (Dkt. No. 1 at 4, ¶ 18).  The immigration judge who ordered Petitioner detained had before him reliable evidence that Petitioner participated in robbing a man at knifepoint in the middle of the night and that he did so in association with other individuals.  If the Petition is granted and another bond hearing is ordered, the immigration judge will have the same evidence before him or her as did the immigration judge who ordered Petitioner detained; nothing Petitioner has submitted calls into question the reliability of the detailed and specific Boston police department incident report. "This court sees no reasonable basis for believing that [the conclusion of the immigration judge] would be altered by shifting the burden to the government to re-introduce the same evidence at a new bond hearing."  *Maldonado-Velasquez*, 274 F. Supp. 3d at 14.

IV.    Conclusion

For the foregoing reasons, I recommend that the Respondent's motion to dismiss be

GRANTED and that Petitioner's Petition for Writ of Habeas Corpus, requesting a new bond

hearing, be DENIED.[2]

Dated: May 14, 2020                           /s/ Katherine A. Robertson
                                              KATHERINE A. ROBERTSON
                                              U.S. MAGISTRATE JUDGE

---

[2] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.